# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEDALE UNION SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>    v.<br><br>J.F,<br><br>    Defendants.<br><br>AND RELATED CROSS-CLAIMS | Case No.: 1:16-CV-0147- JLT<br><br>ORDER RE: J.F.'S REQUEST FOR ADDITIONAL TIME AND THE DISTRICT'S STATUS REPORT<br><br>(Docs. 49, 50) |

On April 26, 2017, the District filed an ex parte status report, in essence, to complain that J.F., through his guardian ad litem, refuses to dismiss the lawsuit despite the completion of the settlement agreement.[1] (Doc. 49) In response, the guardian ad litem filed an ex parte request for the Court to extend the deadline by which the dismissal must be filed. (Doc. 50) Each side believes that other party is in the wrong but not, apparently, wrong enough to file a properly

---

[1] Counsel for the guardian ad litem describes this report as "ex-parte communications with the Court" (Doc. 50-1 at 3); clearly not. First, she was "carbon-copied" on the report. (Doc. 49 at 3) Second, while this filing was certainly "ex parte," it is not an "ex parte communication" as that phrased is used in common parlance. The Court has had no communication with any of the parties and the fact that one party files something on the public docket does not constitute any communication by the Court. Indeed, the Court will communicate with the parties through counsel *only* through written order or directly to them when *both* sides present through representatives. Moreover, generally, the Court will respond *only* to motions filed and set for hearing. It is only due to the second filing by the guardian ad litem that the Court now feels compelled to ignore its other pressing business to address the parties here.

    Finally, counsel for the guardian ad litem asserts that she did not receive this report until 9:00 p.m. on April 26 and then, only through her logging into Pacer (Doc. 50-1 at 3). However, the Court served this report to her via electronic mail immediately upon its filing at 4:59 p.m. on April 26, 2017.

1

noticed motion to dismiss or a properly noticed and scheduled motion to extend the dismissal deadline.

From what the Court has gleaned, the guardian contends that the District is thwarting the settlement agreement because it fails to implement the recommendations of Dr. Ballinger—the vision evaluator. (Doc. 50-1 at 3) The District contends that it has no intention of failing to implement Dr. Ballinger's recommendations and that the IEP team "discussed and considered these findings to determine J.F.'s unique needs." (Doc. 49 at 1) The guardian counters by reporting that the District "would not allow the [IEP] Team to discuss the specific recommendations by Dr. Ballinger" and "District has refused to specifically address Dr. Ballinger's recommendations for Vision Therapy until all other issues had been addressed by the team, causing a significant delay in services to JF." (Doc. 50-1 at 2)

Notably, the guardian's position is contradicted by her earlier admission in the parties' stipulation that,

> Pursuant to Paragraph 6.6 of the settlement agreement, the Parties met on February 23, 2017, for an individualized education program ("IEP") team meeting during which **Dr. Ballinger presented her vision therapy IEE findings in person. However, because review of Dr. Ballinger's vision therapy IEE was not the only topic for this IEP team meeting, the team was not able to complete the full IEP in one day.** Therefore, the team has scheduled May 8, 2017, which is the first available mutually agreeable date, to complete this IEP team meeting. Nevertheless, Dr. Ballinger did complete the presentation of her vision therapy IEE findings on February 23, 2017 and will not participate in the continued IEP team meeting scheduled for May 8, 2017.

(Doc. 46 at 2, emphasis added) The stipulation recited that the District had not yet paid Dr. Ballinger's invoices or reimbursed the parents for amounts paid by them for "the vision therapy IEE." Id. Thus, the stipulation continued, "the Parties respectfully request that this Court retain jurisdiction of this matter until the District has effected payment for Dr. Ballinger's vision therapy IEE." Id. at 3. The Court granted the stipulation and continued the deadline by which the stipulated dismissal was to be filed to today, April 28, 2017. (Doc. 48)

Likewise, the guardian has provided the minutes of the IEP Team meeting from February 2017. (Doc. 50-3) The minutes detail that, in fact, Dr. Ballinger's recommendations *were* discussed and, indeed, Dr. Ballinger herself was present and summarized her opinions for the

group. Id. at 2-3. The minutes note,

> **[Dr. Ballinger] recommends** that we build in visual breaks especially as the day increases in length. **Dr. Ballinger shared** that she thinks Dr. Suter and Mr. Gutcher should both be involved with [J.F.]'s case as he transitions. **Dr. Ballinger shared** we need to make sure there is better visual contrast in our facilities . . . **Dr. Ballinger shared** that Mom is going to talk with Dr. Suter about upgrading the prisms in [J.F.]'s glasses to help. **Dr. Ballinger shared** a note of appreciation for the skills of the aide that currently works with [J.F.]. **Dr. Ballinger shared** that [J.F.] tries to jump through the hoops but his body is so fatigued. He can get little respites throughout the day and maybe we can coax him back to the task but he doesn't have full energy because he is so fatigued. **Dr. Ballinger believes** that [J.F.] needs vision training to increase his awareness and endurance. It was asked that visual breaks be defined and how often they might be needed. **Dr. Ballinger shared** that it depends- when [J.F.] really protests he should get up and move around, maybe use a therapy ball (holding someone's hand), maybe have him stand to get a different visual perspective. Sometimes his tasks are just going through the motions because he is fatigued. Those would be the times to provide those breaks. **Dr. Ballinger shared** that she believes all of the individuals who work with [J.F.] at school are doing such a loving job with [J.F.]. The team discussed some clarification on how [J.F.] navigates elevation drop-offs. **Dr. Ballinger shared** that [J.F.] might see the drop off but may not remember that the drop off is there once he gets to it. **Dr. Ballinger shared** we need to give [J.F.] visual cues so he has that reminder as he approaches those drop offs. **She believes** his attentional issues are because he doesn't always trust what he sees. **Dr Ballinger had the opportunity** to watch [J.F.] have two vision training sessions with Dr. Suter. **Dr. Ballinger shared** that visual cueing systems should be incorporated into the classroom to get him to scan into other areas. **It is recommended by Dr. Ballinger** that Dr. Suter, Mr. Gutcher, and Mrs. Williams work together to get [J.F.] transitioned to the next classroom. **Dr. Ballinger shared** she was not able to complete the conventional tests for figure ground. But things can be tried in a less conventional setting. The more contrast you have the easier it is going to be for [J.F.]. Mrs. Alcantar shared that from the OT standpoint, it is looking at foreground versus background. There is a visual motor competent in this as well- the OT shared it could be attention, functionally in the classroom it is difficult to determine if it is figure ground that is affecting him. **Dr. Ballinger shared** it could be a lack of depth perception. Dr. Ballinger shared that he needs more contrast. **Dr. Ballinger shared** that she and Dr. Suter have ideas that could be shared with the specialist that work with him at school.
> 
> It was shared that [J.F.] hasn't had vision therapy for the last year. It was asked why he hadn't made more progress in these areas previously given that he had a fair amount of Vision Therapy before that (close to 2 years). Why hadn't he learned these skills with the amount of therapy he has already had? **Dr. Ballinger shared** that this is because he has had an increase in demands, he has had some sophistication to his skills, he doesn't always globalize this information, and because the demands are more sophisticated, his visual systems need to get up to speed. It was reiterated that there are more demands now.
> [¶¶]
> It was asked of Dr. Ballinger what her recommendation is for vision therapy. **She shared that** he should have a variety of activities (fine motor, gross motor, spatial, spatial judgment that are over the course of 45-60 minute sessions. In the past, it was discussed that if he missed vision therapy the family would see results because he would start to lose skills. **Dr. Ballinger shared** that he opened up his visual field but he did plateau and needed a break. **Dr. Ballinger shared** she believes he needs to get back into vision therapy because the time and demand of the classroom are becoming more sophisticated. **She believes** this will enable him

3

to more appropriately meet his goals. **She shared** that she believes that vision therapy will help to get him back up to speed. It was discussed that **Dr. Ballinger has talked** a lot about length of day and it was shared that the team can discuss the length of his kindergarten day. Our general education kindergarten classes run a half day, we offer a full day SDC for Kindergarten but, later in the meeting, the team can discuss the recommended length of [J.F.]'s Kindergarten day as part of the discussion about placement.

    Mrs. Weissburg asked if Dr. Ballinger read the progress report and if his vision affects these goals not being met. **Dr. Ballinger shared** that [J.F.]'s inconsistency of his visual system, his visual stability, how he is addressing the task, his endurance, and his visual field is closing down. At times this all interferes with his ability to want to engage over the course of the day. His body fatigues, he has such a level of inconsistency, and he does not want to engage. He lets you know with his objection behaviors such as pushing away or not being on task. His system fatigue compiles over time and more stabilization of his visual system will allow him to better stay on task, remember, and visually engage at school.

    Mrs. Weissburg asked what Dr. Ballinger saw that might be auditory processing disorder. **Dr. Ballinger shared** that when someone is talking in the classroom, he doesn't always respond. But **Dr. Ballinger has a question** about auditory ground. Mom shared [J.F.] sometimes has difficulty following directions at home- especially when it is loud or there is a lot of background noise. Mom shared they have had [J.F.]'s hearing checked and he can hear. **Dr. Ballinger indicated** it is not a hearing issue but a question of his auditory processing.

[¶¶]

    **Dr. Ballinger stated** that she believes there is a need for an auditory processing assessment and that doctor might be able to provide therapy ideas. These might be more acceptable to the parents.

[¶¶]

    Mrs. Feige asked if she could table the conversation about the recommendations regarding the OT report until the next meeting. The team decided the discussion about recommendations would be continued at the continuation meeting.

[¶¶]

    Mom shared that she has heard discussion over whether or not Dr. Ballinger needs to attend the continuation IEP meeting. Mom would like to have Dr. Ballinger attend. She feels her input is needed for discussion about eligibility, placement, and services. Mrs. Weissburg shared she also believes that Dr. Ballinger needs to be here for discussion about supplemental aides and services as well as accommodations and modifications.

    The IEP team tentatively planned to meet on May 8th[2] starting at 8:30 am.

(Doc. 50-3 at 3-14, emphasis added)

The guardian reports that two months after the IEP meeting in February, on April 26, 2017, she requested that by the next day, the District provide an "Administrative Amendment for Vision Therapy Services." (Doc. 50-4 at 2) Her counsel continued, "This will allow for prompt resolution of the Federal Case. <u>All other items in the IEP agenda can then be addressed on May 15, 2017, at the next IEP meeting.</u> If the District refuses to provide the recommended Administrative

---

[2] Apparently, this meeting has been moved to May 15, 2017. (Doc. 50-4 at 2)

4

Amendment to implement Dr. Ballinger's specific recommendations now, I must file the Motion to Continue with the Federal Court by Friday, April 28, 2017, to protect my clients' rights. My clients do not want to have to re-litigate this issue, incurring additional time and expense unnecessarily." Id.

The Court is disappointed by the conduct of counsel. Though it appears the District has complied with the technical aspects of the settlement agreement related to the services of Dr. Ballinger (Doc. 33-2 at 7) and though the settlement agreement does not require the IEP Team to act within any particular timeframe, surely, the parties expected that its action would occur within a reasonable time frame. By the time the Team meets again, it will be about four months after Dr. Ballinger provided her report; the court questions whether this is a reasonable time frame.

On the other hand, to attempt to hold completion of the settlement hostage by demands that were not anticipated by the settlement is, likewise, unreasonable. Further, the seeming belief of counsel that they can merely file documents on the Court's docket without compliance with their obligations to set matters for hearing and without proper notice, and still expect the Court to drop everything to attend to them, sorely misses the mark. Thus, the Court **ORDERS**:

1. The status report, construed as an improperly noticed, improperly supported and improperly scheduled motion to dismiss (Doc. 49), is **DENIED without PREJUDICE**;

2. The ex parte request for an extension of time to file the stipulation dismissal is **DENIED without PREJUDICE**;

3. **Before either side files anything further**—except for a stipulated dismissal—they should be absolutely certain their actions are condoned by the settlement agreement and their prior representations to this Court. The Court **will strictly enforce counsel's obligations under Fed. R. Civ. P. 11(b).**

IT IS SO ORDERED.

Dated: **April 28, 2017**          /s/ Jennifer L. Thurston
                                    UNITED STATES MAGISTRATE JUDGE